IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| RANDALL GAMMETT a/k/a JENNIFFER ANN SPENCER, | Case No. CV05-257-S-MHW |
| Plaintiff, | **MEMORANDUM DECISION AND ORDER** |
| vs. | |
| IDAHO STATE BOARD OF CORRECTIONS, et al., | |
| Defendants. | |

Pending before the Court are the following motions: (1) the IDOC Defendants' Motion for Reconsideration (Docket No. 237); (2) the CMS and PHS Defendants' Joint Motion for Reconsideration and Motion to Terminate Injunction (Docket No. 239, all parts therein); (3) the IDOC Defendants' Motion to Vacate Trial Setting Order (Docket No. 250); and (4) the PHS Defendants' Motion for Scheduling Conference (Docket No. 252).

After reviewing the pending motions and record in this action, the Court will deny Defendants' requests for reconsideration of the order granting preliminary injunctive relief to Plaintiff, and will also deny the requests to terminate the preliminary injunction. The

MEMORANDUM DECISION AND ORDER 1

IDOC Defendants' motion to vacate the trial date in this action will be conditionally granted, and the PHS Defendants' request for a scheduling conference will be granted. The date originally set for the pre-trial conference will be converted to a scheduling conference.

**MOTIONS FOR RECONSIDERATION**

**A.     Background**

On July 27, 2007, the Court granted Plaintiff's motion for injunctive relief, and ordered that

> Defendants who have responsibility for Plaintiff's current welfare and health care are to provide Plaintiff with appropriate female hormone therapy and psychotherapy to address Plaintiff's gender issues, and, where applicable, to comply with IDOC's policies and directives.  Defendants shall notify the Court within ten (10) days of this Order if they are unable to procure a prescription from an Idaho-licensed doctor for the hormone or provide psychotherapy to address Plaintiff's gender issues.

*Memorandum Decision and Order* (Order), *Docket No. 230*, p. 36.  The Court reached the decision on the injunctive relief request after an exhaustive examination of the lengthy briefs, pleadings, affidavits and medical records.  The Court's ruling also focused on the events occurring after Plaintiff was incarcerated and began requesting evaluation and treatment for GID.[1]  Despite the narrowness of the ruling, Defendants have submitted

---

[1] Defendants' "new" evidence challenges the credibility of Plaintiff's pre-incarceration history of attempting to live as a female which was one factor the Court considered.  The following factors upon which the Order focused have not been changed by the new evidence: (1) Plaintiff attempted suicide in August 2004 shortly after he was told he did not have GID; (2) he first attempted castration in October 2005; (3) he tried again and succeeded at self-castration several weeks later; (4) Plaintiff's reason for cutting off his testicles was that he felt he is transgender and "could not stand the sight of them [any] more"; (5) Plaintiff tried to change his

MEMORANDUM DECISION AND ORDER 2

additional affidavits, deposition testimony, and medical records in an attempt to persuade the Court that its ruling is erroneous.

The main theme set forth in the "new" evidence submitted by Defendants is that Plaintiff's self-reported history of attempting to live like a female cannot be substantiated. For example, Plaintiff's claim of taking birth control pills was refuted by the woman who allegedly gave them to Plaintiff. In addition, Plaintiff had alleged that he portrayed himself as a woman while living with another person. This person has now denied that these events occurred. Defendants claim that the contradictions and alleged fabrications in Plaintiff's stories of living like a woman support the original diagnoses of Drs. Khatain and Sombke that Plaintiff does not suffer from gender identity disorder. Therefore, they argue that the preliminary injunction was erroneously granted and call for termination of the injunction.

**B.     Standard of Law**

In *Kona Enterprises, Inc. v. Estate of Bishop*, 229 F.3d 877 (9th Cir. 2000), the Ninth Circuit Court of Appeals clarified the limited use of a Rule 59(e) motion:

---

name to a female name beginning in December 2003, and successfully obtained a legal name change to "Jenniffer Ann Spencer" occurring in October 2006; (6) Plaintiff filed this lawsuit to attempt to obtain treatment for GID; (7) Defendants' view that Plaintiff is now mentally stable is flawed in that the apparent stability is more likely caused by the self-castration and its feminizing effects on Plaintiff; (8) After his incarceration at an IDOC facility in 2000, Plaintiff made efforts to dress and groom as a woman, including wearing skirts, shaving body hair, and using makeup; and (9) Dr. Christensen has opined that irreversible bone density loss caused by hypogonadism would likely start to occur one and one-half (1.5) years after self-castration, and Plaintiff is now beyond that date. *See Order of July 27, 2007*, p. 27.

MEMORANDUM DECISION AND ORDER 3

> Although Rule 59(e) permits a district court to reconsider and amend a previous order, the rule offers an "extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." 12 James Wm. Moore et al., Moore's Federal Practice § 59.30[4] (3d ed. 2000). Indeed, "a motion for reconsideration should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law." *389 Orange Street Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir.1999). A Rule 59(e) motion may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation. *See id.*

*Id*. at 890.

**C.    Discussion**

The Court has reviewed the evidence that Defendants claim warrants the termination of the preliminary injunction, and it is not persuaded that the evidence affects the underlying rationale for the Order. The evidence Defendants have discovered almost two years into this lawsuit relates mainly to the issue of whether they are liable for the alleged failure to diagnose and treat Plaintiff prior to the self-castration, and only marginally to Plaintiff's GID diagnosis and treatment post-castration. The Court's Order for treatment was based on numerous factors and took into account that Plaintiff has a history of lying, manipulating, and attention-seeking. Defendants will be able to use the evidence of Plaintiff's alleged fabrications at the trial in this matter, but the evidence does not change the factors which weighed most heavily in granting the preliminary injunction -- namely, that untreated GID is a life-threatening mental health condition in the context

MEMORANDUM DECISION AND ORDER 4

that Plaintiff has engaged in self-mutilation and suicide attempts while in the custody of the IDOC after repeatedly requesting treatment for GID.  The Order also referred to the health risks associated with hypogonadism from which Plaintiff has been suffering for over eighteen months.  *Order,* p. 31-32.  There is still nothing in the record indicating that a treatment plan for Plaintiff's hypogonadism has been addressed.

The Court's ruling stated that "the greater the relative hardship to [the moving party], the less probability of success must be shown." *Warsoldier v. Woodford*, 418 F.3d 989, 994 (9th Cir. 2005).  Plaintiff's evidence continues to meet these standards, even in light of the allegations that he lied about living as a female and taking hormone pills prior to his incarceration.

Plaintiff's counsel argue that Defendants' new evidence should be excluded because it could reasonably have been discovered and raised earlier in the litigation. While this point may be well taken, the Court notes that the evidence is not entirely "new."  Dr. Brown's report specifically refers to the lying and attention-seeking behavior in which Plaintiff has engaged prior to and during incarceration, so the parties and the Court were on notice that part of Plaintiff's diagnosis included these behavioral factors. The Court's Order focused primarily on the immediate treatment for Plaintiff that is now necessary to treat his psychiatric and medical conditions after the self-castration, not on his conduct pre-incarceration or the legal effect of the conduct of Defendants prior to the self-castration.  The evidence Defendants now bring before the Court has little bearing on Plaintiff's current mental and physical condition which may deteriorate before a trial can

MEMORANDUM DECISION AND ORDER 5

be held if treatment is not provided immediately.

The additional affidavits of Drs. Kohler and Lawrence are similarly unpersuasive on the issue of Plaintiff's current mental and physical condition because their opinions are obviously made in support of Defendants' attempts to limit potential liability for the alleged failure to diagnose and treat Plaintiff prior to self-castration.  Neither one of these doctors has conducted an examination of Plaintiff as of the date of their most recent affidavits.  Dr. Brown's supplemental affidavit indicates that Defendants' new evidence has not changed his current diagnosis of GID.  Nor has the evidence changed his opinion that testosterone hormone therapy is contraindicated for Plaintiff's psychiatric condition.

Defendants further argue the Court committed clear error and should have found that there is simply a difference of opinion as to diagnosis and treatment in this case and that Plaintiff cannot prevail at trial.  The Court disagrees that this is a "cut-and-dried" case, as Defendants see it.  There is sufficient evidence in the record to allow Plaintiff to proceed to trial on his Eighth Amendment claim of deliberate indifference.  Because Plaintiff has a fair chance of prevailing at trial and the balance of harms tips sharply in his favor regarding his current treatment, preliminary injunctive relief is warranted.

Based on all of the foregoing, Defendants' request for reconsideration of the Court's Order granting a preliminary injunction is denied.

### D.     Termination of Preliminary Injunction

The PHS and CMS Defendants also invoke the provisions of the PLRA setting forth the standards for injunctive relief orders regarding prison conditions.  The injunctive

MEMORANDUM DECISION AND ORDER 6

relief can only be ordered "with respect to prison conditions" if it extends "no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs." 18 U.S.C. § 3626(a)(1). The Court must find that the "relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation." *Id.* All injunctive orders entered after the PLRA's enactment must meet this needs-narrowness-intrusiveness test.

Defendants' Motion states that they are requesting termination of the preliminary injunction pursuant to 18 U.S.C. § 3626(b). *See Docket No. 239,* p. 1. This section of the PLRA outlines the method for terminating a final order granting prospective relief. A party may seek termination of final injunctive orders two years after they are entered. *Id.*, § 3626(b). A defendant is entitled to immediate termination if the relief in the final order was granted without findings that meet the needs-narrowness-intrusiveness test. *Id.*, § 3626(b)(2). If the Court makes written findings that prospective relief remains necessary to correct current and ongoing violations of Federal rights, then the prospective relief can remain in effect, at least until such time as another motion to terminate is filed. *Id.,* § 3626(b)(3).

The mechanism for terminating injunctive orders under the PLRA creates an automatic stay within thirty (30) days after the motion to terminate is filed, unless for good cause the Court determines that an additional sixty (60) day postponement of the stay is warranted. *Id.,* § 3626(e)(2)(A), (3). The automatic stay ends when the Court makes a final ruling on the necessity for continuing the prospective relief. *Id.,*

MEMORANDUM DECISION AND ORDER 7

§ 3626(e)(2)(B).

It appears that Defendants are attempting to invoke the automatic stay provisions of the PLRA, but these provisions relate to final injunctive orders, not the preliminary injunctive relief the Court has ordered.  The provisions of the PLRA relating to temporary relief provide that "[p]reliminary injunctive relief shall automatically expire on the date that is 90 days after its entry, unless the court makes the findings required under subsection (a)(1) for the entry of prospective relief and makes the order final before the expiration of the 90-day period."  18 U.S.C. § 3626(a)(2).  Therefore, the statute provides for an automatic expiration of a preliminary injunction, unless it is made final within that time limit.  The Ninth Circuit Court of Appeals has held that a district court may enter a second preliminary injunction upon the expiration of the first without violating the terms of the statute.  *Mayweathers v. Newland*, 258 F.3d 930, 936 (9th Cir. 2001).  Therefore, Defendants are not entitled to invoke the automatic stay provisions of the PLRA, and the preliminary injunction is valid for 90 days, at which time the Court can renew the injunction, pending the trial in this action.

Based on the foregoing, Defendants' request for termination of the preliminary injunction is without merit.

**E.     Treatment for Plaintiff**

The Court's Order directed Defendants to submit affidavits, indicating whether they were able to follow the Court's Order which directed them to provide estrogen hormone therapy and psychotherapy for Plaintiff.  Defendants' response indicated that

MEMORANDUM DECISION AND ORDER 8

they could not implement the terms of the preliminary injunction.  Therefore, the type of further relief ordered by the Court "must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm."  18 U.S.C. § 3626 (a)(2).

Plaintiff's counsel contacted Dr. Ashley Davis, a local Boise physician knowledgeable in cross-sex hormonal treatment of transgender patients.  They propose that Plaintiff be transported to the offices of Dr. Davis for an initial visit and to initiate treatment.  They request that Dr. Davis be immediately provided with access to Plaintiff's existing medical records and that she continue to have access to newly created medical records.  Dr. Davis will also be provided with the diagnosis and treatment recommendations of Drs. Denise Taylor and George R. Brown.  Dr. Davis will be asked to exercise her independent medical judgment to diagnose Plaintiff and fashion an individualized treatment plan.  Plaintiff's counsel request that Plaintiff be allowed to contact Dr. Davis to discuss his treatment as necessary.  Plaintiff will also need to be transported to the offices of Dr. Davis as necessary for follow-up evaluations.  Finally, Plaintiff's counsel request that Plaintiff be given continuing access to Dr. Davis as necessary for his regular care.  Counsel request that the IDOC be directed to pay Dr. Davis' standard hourly rate for all time spent evaluating, treating, and monitoring Plaintiff.

Plaintiff's counsel also contacted Dr. Cathy Marshall Gwin, a local Boise psychologist, who is knowledgeable in providing psychotherapeutic counseling for

MEMORANDUM DECISION AND ORDER 9

transgender patients.  Plaintiff requests that Dr. Gwin be immediately provided with access to Plaintiff's existing medical records, and that she continue to have access to newly created medical records.  Plaintiff will need to be transported to Dr. Gwin's office for purposes of an initial evaluation, and Plaintiff will require continuing access to Dr. Gwin, either by telephone or in-person, as directed by Dr. Gwin for Plaintiff's necessary, regular care.  Counsel request that the IDOC be directed to pay Dr. Gwin's standard hourly rate for all time spent evaluating, treating, and monitoring Plaintiff.

The Court has determined that Plaintiff's proposed treatment plan satisfies the needs-narrowness-intrusiveness test, and it will adopt the plan submitted by Plaintiffs' counsel for providing treatment to Plaintiff.  *See Warsoldier v. Woodford*, 418 F.3d 989, 994 (9th Cir. 2005)(holding that the inmate satisfied the requirements for a preliminary injunction, prohibiting prison officials from punishing him for refusing to follow a system-wide hair-length policy); *Gomez v. Vernon*, 255 F.3d 1118, 1130 (9th Cir. 2001)(holding that the injunctive relief preventing retaliation against six inmates was appropriately tailored and the least intrusive means of correcting the constitutional violation).  The treatment plan is necessary because Defendants were given the opportunity to provide treatment for Plaintiff and have notified the Court that they cannot provide the ordered treatment.

## MOTION TO VACATE TRIAL DATE

Based on the Court's determination that the Order for preliminary injunctive relief can be entered for an additional 90 days after its expiration, the Court will conditionally

MEMORANDUM DECISION AND ORDER 10

grant Defendants' motion to vacate the trial date.  In the event Defendants take the position that the preliminary injunction expires at the end of 90 days and cannot be renewed by the district court, then the Court will retain the original trial date in order to preserve the efficacy of the treatment plan for Plaintiff.  The Court will change the pre-trial conference set for October 10, 2007 to a scheduling conference for this case. Counsel shall be prepared to discuss the deadlines for all pre-trial submissions and a new trial date.

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED that the IDOC Defendants' Motion for Reconsideration (Docket No. 237) is DENIED.  The following treatment plan shall be implemented no later than ten (10) days after entry of this Order:  Plaintiff shall be transported to the office of Dr. Ashley Davis for an initial visit and to initiate treatment.  Dr. Davis shall be immediately provided with access to Plaintiff's existing medical records, and she shall continue to have access to newly created medical records. Dr. Davis shall be provided the diagnosis and treatment recommendations of Drs. Denise Taylor and George R. Brown.  Dr. Davis shall exercise her independent medical judgment to diagnose or fashion an individualized treatment plan for Plaintiff.  Plaintiff will be allowed to contact Dr. Davis to discuss his treatment as necessary.  Plaintiff shall be transported to the offices of Dr. Davis as  necessary for follow-up evaluations.  Plaintiff shall be provided continuing access to Dr. Davis as necessary for his regular care and treatment.  Based on the Court's understanding that the IDOC regularly pays outside

MEMORANDUM DECISION AND ORDER 11

consulting medical care providers their standard hourly rate for the treatment of inmates, the IDOC shall pay Dr. Davis' standard hourly rate for all time spent evaluating, treating, and monitoring Plaintiff.

Plaintiff shall also receive immediate treatment from Dr. Cathy Marshall Gwin, a local Boise psychologist.  Dr. Gwin shall be immediately provided with access to Plaintiff's existing medical records, and she shall continue to have access to newly created medical records.  Plaintiff shall be transported to the offices of Dr. Gwin for purposes of an initial evaluation.  Plaintiff shall be given continuing access to Dr. Gwin, either by telephone or in-person, as determined by Dr. Gwin is necessary for Plaintiff's regular care.  The IDOC shall pay Dr. Gwin's standard hourly rate for all time spent evaluating, treating, and monitoring Plaintiff.

IT IS FURTHER HEREBY ORDERED that the CMS and PHS Defendants' Joint Motion for Reconsideration and Motion to Terminate Injunction (Docket No. 239, all parts therein) are DENIED.

IT IS FURTHER HEREBY ORDERED that the IDOC Defendants' Motion to Vacate Trial Setting Order (Docket No. 250) is conditionally granted as set forth above.

IT IS FURTHER HEREBY ORDERED that the PHS Defendants' Motion for Scheduling Conference (Docket No. 252) is GRANTED.  The pre-trial conference set for October 10, 2007, at 10:00 a.m. shall be changed to a scheduling conference.

MEMORANDUM DECISION AND ORDER 12



DATED: **September 7, 2007**

Honorable Mikel H. Williams
United States Magistrate Judge

MEMORANDUM DECISION AND ORDER 13